UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CRIMINAL ACTION NO. 5:18-CR-73-JMH

UNITED STATES OF AMERICA                                    PLAINTIFF

V.

COLTON GRUBBS                                              DEFENDANT

## DEFENDANT'S SENTENCING MEMORANDUM

Comes the Defendant, Colton Grubbs, by and through undersigned counsel, and respectfully submits this sentencing memorandum pursuant to 18 U.S.C. § 3553(a), which directs the Court to consider the history and characteristics of the Defendant and the nature and circumstances of the offense, among other factors, in order to fashion a sentence that is "sufficient, but not greater than necessary" to comply with the purposes set forth in the statute.

That critical statutory phrase, "sufficient, but not greater than necessary", is at the core of Colton's requested 24-month sentence, which represents only a six-month variance from the 30 to 37 months range initially contemplated by the parties. To be sure, Colton knows that he has committed some serious offenses and he acknowledges that he deserves to be punished. He makes no bones about it – he deserves to go to prison. He will not insult the Court by suggesting otherwise. Colton simply and contritely proposes to the Court that a sentence of 24 months will teach every lesson and accomplish every goal of 18 U.S.C. § 3553(a); therefore, a sentence any higher is not necessary. Given the expedient way that he faced the instant charges, his lack of

criminal record, his pursuit of education and steady employment, his youth, and the sizeable financial forfeiture that has already occurred, a term of 24 months is "sufficient, but not greater than necessary" in the context of this case.

The first time that the undersigned met with Colton, the young man professed his guilt and his intention to face his poor choices head-on. Colton expressed a willingness to save governmental resources and plead by information. As further follow-through, in March 2018, despite the fact the Government was seizing over $1,000,000 worth of his Bitcoin when it was alleging that he only earned around $250,000 from his computer program, Colton willingly provided the FBI his Bitcoin key on less than 24-hours turnaround. He never raised a complaint and never tried to fight the seizure of $750,000 *more* than the Government claimed that he had earned by crime. He understood that he had potential Eighth Amendment claims to raise against such a disproportionate seizure, yet he decided to forego those arguments as another signal to the Government and ultimately the Court that he wanted to own his misdeeds and accept responsibility.

Colton has no history of violence and no criminal history whatsoever. Even though the instant investigation has been looming over him for the past 14 months, he has pressed on dutifully with work and school. He has been steadily enrolled at a local community college, where he maintains a nearly perfect grade point average (3.85 on a 4.00 scale). During the current fall semester, alone, Colton is taking eight courses totaling 21 credit hours. Assuming he is permitted to complete the current semester, he will have accumulated 60 credit hours toward a degree. When not studying or attending classes, Colton has been managing his father's small, hometown liquor store in Junction City, Kentucky.

Colton is undeniably brilliant when it comes to computers and technology. (He is totally self-taught.) As he progresses in college, he intends to study neuroscience with a focus on the ways that technologies are being coupled with the human body, like the integration of medical devices into neural pathways. Whether it be developing prosthetic hands that might one day be able to respond to human thoughts just as nimbly as real hands or helping a patient regain function through micro-sized computer processors that replace or assist damaged parts of the brain, Colton has big aspirations. As the nature of the instant offense demonstrates, Colton has the intellectual horsepower to back up those aspirations. He is painfully, introspectively aware that he has already squandered several years of his talents; but the Court can rest assured that he will not waste any more time. There is every reason to believe that Colton's future will be positive and fruitful and that he has learned from his misdeeds.

Colton also respectfully requests that the Court consider his notable youth as it determines an appropriate sentence. He was 13 years-old when he began coding parts of the program that are at the center of the instant case. As his parents' marriage crashed around him, fight-after-fight, night-after-night, Colton found a safe space alone in his bedroom, chatting with strangers online and working on his software projects. He learned how to write programs (*i.e.*, to "code") for computers as well as mobile devices like telephones and tablets. He made friends and got support and advice from anonymous adult coders that he met on the Internet. What started as an interest or a hobby began consuming more and more of his time.

By the time Colton was 16 years-old – still a child – he had joined HackForums.net (an online community of coders and hackers), launched LuminosityLink (the program at the heart of the instant case), and begun accepting payment for the program via Bitcoin and PayPal. To a 16-

year-old kid from Garrard County whose dad owned a liquor store and worked on cars, this all seemed unbelievable.

So, if all of that happened while he was a juvenile, why is Colton before the Court? His criminal culpability in the instant case centers on the fact that after he turned 18 years-old, he did not stop. He knows he should have stopped and completely accepts responsibility for what he did both before and after he turned 18. And while his youth does not excuse his conduct, it is important for the Court to understand that Colton's ill-fated snowball started from just a handful of flakes when he was 13 – before he had even begun to meaningfully develop physically, emotionally, intellectually, or judgmentally into an adult. Put simply, the choices Colton made as a kid got his snowball started tumbling down a troublesome hill. Regrettably, by the time he turned 18, that snowball had been-a-rollin' long enough that there was no impetus for a real moment of reflection or adult introspection. Now a little older, and from his current point of retrospective clarity, Colton is thankful that his snowball crashed into the FBI before it got any bigger.

All the above should be especially compelling to the Court when it considers Colton's situation through the filter of learned materials attached hereto that help explain why young people can sometimes make exceptionally foolish decisions. Scientific studies consistently show that a young person's brain is not fully developed until his/her mid-20's and that impulsive, impetuous behaviors lacking regard for consequence or societal norms are especially high in adolescents and young adults. *See* Alexandra Cohen, Richard Bonnie, Kim Taylor-Thompson and BJ Casey, *When Does a Juvenile Become and Adult? Implications for Law and Policy*, 88 Temple Law Rev. 769, 783 (2016) (summarizing recent scientific research on brain maturation and noting that "noninvasive brain imaging and postmortem studies have shown continued

regional development of the prefrontal cortex, implicated in judgment and self-control beyond the teen years and into the twenties.") (Attached as Exhibit 1); Jay Giedd, *The Amazing Teen Brain*, 312 Scientific American 33, 34 (2015) ("The most recent studies indicate that the riskiest behaviors (among adolescents) arise from a mismatch between the maturation of networks in the limbic system, which drives emotions and becomes turbo-boosted in puberty, and the maturation of networks in the prefrontal cortex, which occurs later and promotes sound judgment and the control of impulses. (Attached as Exhibit 2). Indeed, we now know that the prefrontal cortex continues to change prominently until well into a person's 20s."); Laurence Steinberg, *A Social Neuroscience Perspective on Adolescent Risk-Taking*, 28 Developmental Review 78, 93 (2008) ("[T]he development of self-regulatory capacities…occurs over the course of adolescence and during the 20s. (Attached as Exhibit 3). Considerable evidence suggests that higher level cognition, including the uniquely human capacities for abstract reasoning and deliberative action, is supported by a recently evolved brain system including the lateral prefrontal and parietal association cortices and parts of the anterior cingulate cortex to which they are highly interconnected.")

Citing numerous similar studies, the United States Sentencing Commission, itself, has recognized defendants as old as 25 as "youthful offenders" because of "…recent case law and neuroscience research in which there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average." *See* United States Sentencing Commission Publication: *Youthful Offenders in the Federal System*, United States Sentencing Commission (2017) at p. 5.[1] The Commission's report also notes a body of United States

---

[1] *Youthful Offenders in the Federal System*, United States Sentencing Commission, 2017, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf (last visited October 4, 2018).

Supreme Court precedents wherein that Court's decisions have been informed by advancements in neuroscience. *Id*. at p. 6, *citing Roper v. Simmons*, 543 U.S. 551 (2005) and *Miller v. Alabama*, 132 S.Ct. 2455 (2012), among others.

Finally, another Sentencing Commission publication, *Recidivism and the "First Offender," Release 2*, United States Sentencing Commission (2004), highlights a variety of factors indicating that Colton's risk of recidivism is quite low.[2] He has no history of violence. He is educationally and vocationally engaged. He has advanced education. Although he has experimented with drugs, his is not a drug offense. He has absolutely no history of prior contact with law enforcement and he has soundly accepted responsibility for his offense. Per the Sentencing Commission's study, these factors are among a set of sound predictors of life success and a lack of recidivism. In short, he is not the sort of person from whom society needs to be protected in the future.

Given Colton's youth, his significant voluntary forfeiture, his total lack of criminal history, his educational engagement, his familial support, his employment, and his encompassing acceptance of responsibility, the defense respectfully and humbly requests that the Court *Booker-*vary downward from the sentencing range and impose a sentence of 24 months imprisonment. Such a sentence would soundly punish and deter while still recognizing that there is great potential and worth in Colton and that he is not just the sum of the foolish decisions that brought him before the Court.

---

[2] *Recidivism and the "First Offender," Release 2*, United States Sentencing Commission, 2004, including Exhibits 1-10 *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last visited October 4, 2018).

Respectfully submitted,

/s/ BRANDON W. MARSHALL
NASH MARSHALL, PLLC
129 West Short Street
Lexington, Kentucky 40507
Telephone: (859) 254-3232
Fax No.: (859) 225-4746
E-mail: bwmarshall@nashmarshall.com
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

       I hereby certify that on October 4, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this matter or service was completed by first class mail to any non-CM/ECF participants. Additionally, a courtesy copy of this pleading and attachments has been emailed to United States Probation Officer Alan Hammond.

                                                /s/ BRANDON W. MARSHALL